# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| LAVERNE MCIVER,<br>       Plaintiff,<br>v.<br><br>BRIDGESTONE, LLC, BRIDGESTONE AMERICAS, INC, BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, AND BRIDGESTONE RETAIL OPERATIONS, LLC<br>       Defendants. | COMPLAINT<br>(JURY TRIAL DEMANDED) |

**NOW COMES** the Plaintiff, by and through counsel, and alleges the following:

## PARTIES, CAPACITY, JURISDICTION, AND VENUE

1. That the Plaintiff, **LAVERNE McIVER** (hereinafter referred to as "Plaintiff") is a resident of Wilson County, North Carolina and has been so within the preceding six months.

2. That Defendant **BRIDGESTONE, LLC**, is a corporation with its principal place of business at 132 Joe Knox Ave, Ste. 105, Morresville, NC 28117.

3. That Defendant **BRIDGESTONE AMERICAS, INC.**, is a corporation with its principal place of business at 160 Mine Lake Ct., Ste. 200, Raleigh, NC 27615.

4. That Defendant **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC**, is a corporation with its principal place of business at 160 Mine Lake Ct., Ste. 200, Raleigh, NC 27615.

5. That Defendant **BRIDGESTONE RETAIL OPERATIONS, LLC**, is a corporation with its principal place of business at 160 Mine Lake Ct., Ste. 200, Raleigh, NC 27615.

Defendants **BRIDGESTONE, LLC, BRIDGESTONE AMERICAS, INC., BRIDGESTONE**

1

AMERICAS TIRE OPERATIONS, LLC, and BRIDGESTONE RETAIL OPERATIONS, LLC, will for all intent and purposes be referred to collectively as "Bridgestone" or "Defendants" throughout this Complaint.

6. Plaintiff is an African-American female employee of the Defendant.

7. That the primary acts occurred in Wilson, Wilson County, North Carolina.

8. That this is an action for discrimination on the basis of race and retaliation pursuant to 28 U.S.C. § 1331; Title VII of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1981a.

9. That this is an action for wrongful termination in violation of public policy violation of N.C. Gen. Stat. §143-422.2.

## CONDITIONS PRECEDENT

10. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e-5(f)(3) have occurred or been complied with. On or about October 12, 2018, Plaintiff timely submitted a charge of employment discrimination on the basis of race and retaliation to the Equal Employment Opportunity Commission (hereinafter EEOC). On November 16, 2018, the EEOC issued to Plaintiff a Letter finding that the EEOC is unable to conclude that the information obtained establishes violation of the statutes. The instant action is filed within ninety (90) days of the receipt of the said Notice.

## FACTUAL ALLEGATIONS

11. On or around June 17, 1996, Plaintiff was hired at Bridgestone and on or around 10 years ago, was hired as an MTS Operator (hereinafter referred to as "operator") for Bridgestone. Bridgestone manufacturing facility was located at 3001 Firestone Pkwy Wilson, NC 27893.

12. Claude "Sandy" Lamm, a Caucasian male, was Plaintiff's supervisor, working for Defendants.

13. Andrew Moler, a Caucasian male, was one of Plaintiff's HR managers, working for Defendants.

14. Erica Hauser, a Caucasian female, was one of Plaintiff's HR representatives, working for Defendants.

15. James McClain, an African American male, was the corporate HR director, working for Defendants.

16. Phillip Thursby, a Caucasian male, was the tire room manager, working for Defendants.

17. Paul Daniel, a Caucasian male, was Plaintiff's section manager, working for Defendants.

18. Tony Parnell, a Caucasian male, was the former tire room manager, working for Defendants.

19. Tracy Moye, a Caucasian male, was one of Plaintiff's former section managers, working for Defendants.

20. Troy Malhon, a Caucasian male, was a MTS Operator and one of Plaintiff's coworkers, working for Defendants.

21. In or around 2006, Chris Hawley, tire machine operator hung a neuse on the machines of two (2) black male employees' machine in the MTS department. HR found out about it, took pictures of it and took it down. Neither Mr. Hawley nor Jason Wheeler, the employee who took responsibility for the neuse, were disciplined.

22. Plaintiff filed her first EEOC Charge in or around 2009. Her second EEOC Charge was filed on February 5, 2014. Her third EEOC Charge was in filed in December 26, 2017.

3

23. This lawsuit is filed subsequent to a right to sue letter received in her fourth EEOC Charge filed in 2018.

24. In 2016, Plaintiff expressed interest in and began applying to an upcoming job posting within her company.

25. On or about July 10, 2016, two days prior to the posting of the job that Plaintiff had expressed interest in applying to, Plaintiff was issued a performance review by her supervisor, Mr. Lamm.

26. In the 2016 Performance Review, Mr. Lamm stated that Plaintiff did "meet expectations" in all categories, however, left the remark that Plaintiff needed to "work on working well with others".

27. Plaintiff was unware of such allegations and this was the first time hearing of them.

28. Plaintiff had never been made aware of any performance issues in the past, prior to this performance review.

29. Plaintiff questioned Mr. Lamm about the allegations and Mr. Lamm refused to provide any evidence of the allegation or the identity of her accuser.

30. Plaintiff continued to ask Mr. Lamm about the allegations, until Mr. Lamm stated that he was doing what was told to him by Erica Hauser.

31. Plaintiff then spoke with Ms. Hauser to gather more information on why someone had made these allegations about her.

32. Ms. Hauser told Plaintiff that she Hauser was approached by Mr. Lamm and Tracy Moye inquiring "what to do about" Plaintiff. Ms. Hauser informed Mr. Lamm and Ms. Moye that she would need documentation in order to terminate Plaintiff.

33. In January 2017, Plaintiff then confided in her former plant manager, Michael Darr, about the situation and how to handle it.

34. Mr. Darr instructed Plaintiff to apologize to "the boys" in reference to her complaint of discrimination that she filed with the EEOC in 2009. Mr. Darr further informed Plaintiff that she would not be able to transfer to a different position or obtain any promotions within the company.

35. Plaintiff then proceeded to get in contact with her corporate HR director, James McClain. Plaintiff explained her situation to Mr. McClain over the phone. She was informed by Mr. McClain that Mr. Lamm and Tracy Moye could not take the actions that were occurring.

36. Subsequently, Mr. McClain came to the plant for a site visit. Once he had arrived, he no longer had the same opinion on Plaintiff's issue and refused to speak with her.

37. Without resolution of her 2016 performance review dispute, Plaintiff was referred to a different HR manager, Andrew Moler, in early 2017. Plaintiff ended the meeting when Mr. McClain refused to discuss company policy with Plaintiff.

38. On or about July 13, 2017, Plaintiff had a meeting scheduled with Mr. Lamm, Mr. Moler, Phillip Thursby, Paul Daniel, and Erica Hauser, in which she was informed that was going to be to discuss her 2016 Performance Review.

39. The day before, on or about July 12, 2017, Plaintiff received her 2017 performance review by Mr. Lamm.

40. The 2017 Performance Review again stated that Plaintiff needed to work on teamwork and her ability to work well with others.

41. Plaintiff expressed her concerns with the 2017 Performance Review and was told by Mr. Lamm, that the review would be discussed during the July 13th meeting.

42. On or about July 13, 2017, Plaintiff had a meeting with Mr. Lamm, Mr. Moler, Mr. Thursby, Mr. Daniel, and Ms. Hauser. At the beginning of the meeting Mr. Moler told Plaintiff that there would be no discussion regarding her 2016 Performance Review and they would only be discussing her 2017 Performance Review.

43. In the 2017 Performance Review, Mr. Lamm stated that Plaintiff should not "focus on making unnecessary adjustments when the machine is in tolerance."

44. This was again, the first time Plaintiff had heard of these allegations prior to the performance review.

45. Once Plaintiff asked about the allegations, Mr. Lamm informed her that Troy Malhon had made the complaint.

46. Mr. Malhon had recently transferred to Plaintiff's department in or about August 2016 and was known to be a good friend of Mr. Lamm prior to the transfer. Plaintiff didn't have any issues with her supervisor, Mr. Lamm until Mr. Malhon was transferred into her department.

47. During the July 13, 2017 meeting, Plaintiff was also accused of making unnecessary adjustments to the machines and Mr. Daniel advised that the matter was still under investigation.

48. Plaintiff was unaware of these allegations against her and this was the first time she had heard of the additional allegation of making unnecessary changes to the machines.

49. Additionally, during the July 13 meeting, Plaintiff was scorned for not providing a list of items she needed training on. When Plaintiff was hired, she received two weeks of training and was told the rest of the training would be done on the job, so she was unaware of any further training she needed.

6

50. In or around February 2018, while Plaintiff was working, she had to clean the machine several times due to an excessive amount of grease on the machine. Plaintiff attempted to figure out where it was coming from as she was unaware of where the grease came from and made no accusations as to someone putting the grease there.

51. On or about April 17, 2018, Plaintiff noticed that her machine was working with irregularities and requested that the crew manager, Joe Davis, come and look at her machine. After some observation by Mr. Davis, Mr. Lamm, and Troy Malhon, the crew manager, Mr. Davis, confirmed that the machine was using an improper part and the irregular piece was replaced.

52. Up to or about April 18, 2018, Plaintiff had filed three charges against Defendants with the EEOC.

53. On or around April 18, 2018, Mr. Lamm, Andrew Moler, Phillip Thursby, Paul Daniel, and Ms. Hauser met with Plaintiff to discuss her performance.

54. During the meeting, Plaintiff was accused of having more delays than other employees, that her teamwork had not improved, and that she constantly accused Troy Malhon of sabotage.

55. Plaintiff made attempts to ask questions or submit request, however these inquiries would go unanswered by Defendants.

56. At the conclusion of the April 18th meeting, Plaintiff was asked to step out of the room where she could hear Mr. Thursby say to "suspend her" amongst the discussion.

57. Plaintiff was suspended with pay because Mr. Thursby did not feel comfortable with her returning to the floor.

7

Case 5:19-cv-00038-H   Document 1   Filed 02/14/19   Page 7 of 12

58. On or about April 19, 2018, Plaintiff received a text from her job that her work locker was being cleaned out without any notification to her or reasoning behind why.

59. On or about April 25, 2018, Plaintiff had a meeting with Mr. Thursby, Ms. Hauser, and Mr. Moler wherein they stated they had been coaching her for the last year.

60. Plaintiff was told she would either become a "single operator role" or voluntarily resign and had to choose by 4pm on April 26, 2018.

61. Plaintiff had been passed up several times for the VMI MAXX job and had not been given reason on why she did not received even an interview.

62. Plaintiff has spoken with several past Bridgestone employees who have reported Mr. Lamm for harassment and was told the only outcome was that "Mr. Lamm would retire soon"

63. Plaintiff's supervisors and Bridgestone management subjected her to a hostile work environment.

64. Plaintiff was not given a reason for this treatment.

65. Plaintiff believes she was discriminated against because of her race and in retaliation for her EEOC complaint.

### FIRST CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

66. Paragraphs 1 through 65 are herein replied and incorporated by reference.

67. Plaintiff is an African-American Female.

68. Plaintiff's supervisors colluded against Plaintiff to prohibit her from advancing in her field and forcing her into a different position, limiting her earning capacity.

69. Plaintiff had great work performance and positive feedback from all managers and employees prior to this incident and other employees who are not involved in this action, after she was forced to move positions.

70. Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment by removing her earned work from home days on the basis of his race and by refusing to grant her a meaningful remedy for the violation of her rights.

## SECOND CAUSE OF ACTION:
## RETALIATION IN VIOLATION OF TITLE VII

71. The allegations in paragraph 1 through 70 are realleged and incorporated herein by reference.

72. Mr. Lamm, Mr. Moler, Mr. Hauser, Mr. Thursby, Mr. Daniel, Ms. Moye, and Mr. Malhon retaliated against Plaintiff because of her complaints to Human Resources and her previous EEOC charges against the Defendants.

73. Mr. Lamm, Mr. Moler, Ms. Hauser, Mr. Thursby, Mr. Daniel, Mr. Moye, and Mr. Malhon: created false accusations against Plaintiff stopping her from getting promoted or moving to a new position; removed her from her position and forced her to take a different level position; forced Plaintiff into a position where she cannot earn as many hours because of her carpal tunnel.

74. Plaintiff reported the retaliation to Human Resources but the retaliation accelerated and resulted in Plaintiff still not being able to get promoted.

75. The Defendants knew about the retaliation but failed to take prompt, corrective action.

76. Defendants' retaliation against Plaintiff constitutes gross, wanton, reckless, and/or intentional violations of his rights under Title VII, entitling her to punitive damages.

## THIRD CAUSE OF ACTION:
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

77. Paragraphs 1 through 76 are herein replied and incorporated by reference.

78. Plaintiff belongs to a protected group and was is subject to unwelcome harassment by Tory Malhon, Sandy Lamm, Philip Thursby, Human Resources and management because of her race, her complaints to Human Resources and EEOC charges against Defendants.

79. The harassment was unwelcomed and sufficiently pervasive to affect a privilege of Plaintiff's employment in that Defendants' employees harassed Plaintiff by fabricating complaints from co-workers and placing false information in her performance reviews.

80. As a result of these false accusations and information, Plaintiff was denied a promotion and was removed from her department.

81. Plaintiff loss wages when she was transferred from MTS to the KBN-2 department.

82. Plaintiff reported the harassment to Human Resources but the harassment accelerated and became more severe.

83. The Defendants knew about the harassment but failed to take prompt, corrective action.

WHEREFORE, Plaintiff requests the following prayer for relief against defendants as follows:

1. Compensatory damages including back pay and front pay.
2. Pain and suffering in excess of $500,000.00.
3. Punitive damages.
4. Prejudgment interest as provided by law.
5. Post-judgment interest as provided by law.
6. Costs of suit.
7. Attorney's Fees.
8. That all issues of fact be tried by a jury.

9. For such other and further relief to which Plaintiff may justly be entitled.

Respectfully Submitted,

This the 7th day of February 2019.

*/s/ Carena Brantley Lemons*
Carena Brantley Lemons
THE LEMONS LAW FIRM, PLLC
1921 North Pointe Drive, Suite 201
Durham, North Carolina 27705
Phone: (919) 688-7799
Fax: (866) 302-5417
North Carolina Bar State No: 28249
Attorney for Plaintiff
carena@thelemonslawfirm.com

11

# VERIFICATION

I, **Laverne McIver**, being first duly sworn, deposes and says that I am the Plaintiff in the above action, that I have read and reviewed the foregoing complaint and it is true to the best of my knowledge, except as to those matters which are alleged upon information and belief, and as to those I believe them to be true.

This the 7th of February 2019.

_____
Laverne McIver

Sworn to and Subscribed before me,
This the 7th day of February 2019.

_____
Notary Public

My Commission Expires: 8/3/2021

[Notary Seal: KASHUNDA BARNES, NOTARY PUBLIC, NASH COUNTY, N.C.]